Rachael D. Lamkin (246066)
One Harbor Drive, Suite 300
Sausalito, CA 94965
Phone: 916.747.6091
Fax:     916.747.6091
RDL@LamkinIPDefense.com

*Attorney for DJ Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **QUERYLY, LLC**<br><br>                     Plaintiff,<br><br>          v.<br><br>**HITEL TECHNOLOGIES, LLC AND IP EDGE, LLC**<br><br>                     Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Queryly, LLC ("Queryly") files this complaint against Defendants Hitel Technologies, LLC ("Hitel") and IP Edge, LLC ("IP Edge") (collectively "Defendants" or "Hitel/IP Edge") seeking declaratory judgment and alleging:

## NATURE OF THE ACTION

1.     This is an action to protect Queryly's customer Boston Globe Media Partners, LLC (the "Boston Globe") and potentially other customers, from meritless patent lawsuits.

2.     IP Edge sent the Boston Globe a "Notice of Infringement," purporting to be the

"licensing advisor" for the alleged patentee, Hitel.  **Exhibit A,** at DJExhA_001.

3. But, consistent with IP Edge's pattern and practice, Hitel appears to be a sham shell entity, created to secret the identity of the real patent owner, IP Edge.

4. For example, the purported Managing Member of Hitel is Annette Rathgeber.  Ms. Rathgeber is in fact an "Executive Support and Capital Partner Liason [*sic*]" (*i.e.,* an executive assistant) at IP Edge.[1]

5. By way of second example, the patent assignment allegedly filed by Hitel with the USPTO was submitted by Linh Deitz, the Office Manager for IP Edge.[2]  **Exhibit B.**

6. IP Edge's use of its female office staff to secret its actual ownership of Hitel is more than unseemly, in so doing, IP Edge perpetrates fraud upon the Court and the USPTO, as detailed below.

7. IP Edge has a pattern and practice of creating sham shell entities in order to avoid sanctions and otherwise hide its true ownership of weak patents asserted in meritless cases.   As explained by the Honorable Judge Colm F. Connolly in another IP Edge sham plaintiff litigation:

> by structuring this litigation the way you have with [Mavexar/IP Edge], you've basically put a plaintiff in this court asserting a patent, and the plaintiff has no assets. So you've immunized, effectively, the plaintiff from the consequences of a frivolous lawsuit, for instance. [Mavexar/IP Edge] who's driving the train, isn't formally a party here, so you've insulated it[.]

Backertop Licensing [IP Edge], Case No. 1:22-cv-00573-CFC, November 10, 2022 Evidentiary Hearing Tr. 51:24-52:51:7.

8. Occam's Razor suggests that the only reason IP Edge would hide its actual ownership of patents prior to assertion is that IP Edge understands said assertions to be baseless; *i.e.,* IP Edge and is trying to insulate itself from sanctions and attorney's fees awards.

---

[1] https://www.linkedin.com/in/annette-rathgeber-b17b9989/
[2] https://www.linkedin.com/in/linh-deitz-8830028/

9. This is not a small problem.

10. As noted by RPX, "the trend in the NPE numbers [] is heavily influenced by complaints filed by affiliates of IP Edge LLC, a file-and-settle monetization firm that has brought more litigation than any patent plaintiff since 2010."[3]

11. IP Edge has brought more litigation that any patent plaintiff in twelve years.

12. "For most of its history, IP Edge has tended to assert its patents through numerous, short-lived district court suits, rarely engaging in substantive litigation, and usually dismissing its cases during the initial pleadings stage. More specifically, 30% of IP Edge cases are dismissed within 90 days of a complaint, while 95% are resolved within a year. This apparent preference for early settlement also provides a potential explanation for IP Edge's overwhelming post-*TC Heartland* preference for the District of Delaware for its litigation (accounting for around 63% in 2021), as opposed to the Western District of Texas (the current favorite for other NPE plaintiffs, as detailed further below). The latter venue's emphasis on scheduling trials as early as possible may deter plaintiffs like IP Edge that seem disinclined to test their cases on the merits."[4]

13. "In 2021, IP Edge added 615 defendants, or about 26.3% of all NPE litigation filed during the year."[5]

14. Based on this data, Queryly has every reason to expect a lawsuit from IP Edge or one of its sham plaintiffs such as Hitel.

15. The IP Edge Notice of Infringement expressly states that the Boston Globe infringes US Patent No. 7,689,617, and includes the '617 Patent and an infringement chart. **Exhibit A,** *at*

---

[3] https://www.rpxcorp.com/wp-content/uploads/sites/6/2022/04/RPX-Q4-in-Review-January-2022.pdf , at 3.
[4] *Id*., at 4.
[5] *Id*.

*DJExhA_001.*

16.    At a high level, the '617 Patent covers search functionality that learns from the user's input. Hitel has sued thus far thirty (30) companies, all of them retailers, none of them manufacturers of search technology.

17.    Lawsuits and infringement notice letters such as the one sent to the Boston Globe reflect a common IP Edge strategy. A product's manufacturer knows its technology inside and out and is therefore well-positioned to defend a baseless infringement claim. Downstream retailers generally lack such knowledge. By ignoring the manufacturer and suing retailers, IP Edge can secure nuisance-value settlements from retailers who are ill-equipped to defend an unfamiliar technology and do not want their business relationships disrupted.

18.    Any dispute about whether Queryly's technology infringes Hitel/IP Edge's purported patented methods must be litigated in this case alone. Federal Circuit law could not be more clear. Recognizing the problem caused by customer suits, it has held that the upstream manufacturer or supplier—here, Queryly—must be given the opportunity to defend its own technology. To that end, the Federal Circuit has expressly empowered district courts presiding over a manufacturers' declaratory judgment action to enjoin collateral and duplicative customer suits.

19.    For this reason, and as alleged more particularly herein, Queryly brings this action for a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, to declare that the Queryly Accused Product does not infringe Hitel/IP Edge's patents, and, if necessary to enjoin Hitel/IP Edge, pursuant to the manufacturer-customer suit rule, from proceeding with any subsequent litigation against Queryly's customers such as the Boston Globe.

**THE PARTIES**

20.    Queryly is a New Jersey Corporation with a principal place in Jersey City, New

Jersey.

21. Defendant Hitel purports to be a "a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 4757 W Park Blvd, STE 113-1052, Plano, Texas 75093." *See, e.g., Hitel Technologies LLC v. Rooster Teeth Productions, LLC*, WDTX-6-22-cv-00896, Dkt. No. 1, ¶2.

22. Hitel's purported principal place of business is a gift store and mailbox service called the "Plano Postal Shoppe".[6]

23. IP Edge is a Texas Corporation with a registered agent for service of process in Austin Texas (the exact same agent as Hitel). IP Edge also appears to use a mailbox service as the address for its principal place of business.

## JURISDICTION AND VENUE

24. This is a civil action regarding allegations of patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, in which Queryly seeks declaratory relief under the Declaratory Judgment Act. Hitel/IP Edge has sent a Notice of Infringement to Queryly's customer the Boston Globe alleging patent infringement based in part on its use of Queryly's Accused Product. Hitel/IP Edge's allegations reference Queryly's Accused Product as the allegedly infringing instrumentality, and therefore give rise to implied infringement claims against Queryly. The Boston Globe has requested indemnification in connection with the threats and allegations by Hitel/IP Edge, and Queryly has agreed to indemnify the Boston Globe.

25. Thus, a substantial controversy exists between Queryly and Hitel/IP Edge that is of sufficient immediacy and reality to empower the Court to issue a declaratory judgment. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338, and under 28

---

[6] https://www.yelp.com/biz/postal-shoppe-plano-2 ; https://www.facebook.com/OurPostalShoppe/

U.S.C. §§ 2201 and 2202.

26. The Court has personal jurisdiction of Hitel and IP Edge as they are both Texas Corporations.

27. Venue is proper in this court under 28 U.S.C. § 1391 because Hitel purports to reside in this district and Hitel and IP Edge are both Texas Corporations.

28. This Court has jurisdiction over Queryly's Inequitable Conduct claim pursuant to 28 U.S.C. § 1367.

29. Queryly has therefore brought this action to obtain just and speedy resolution of this dispute, to relieve Queryly's customer of the unnecessary burden of litigating a meritless case that targets the Queryly Accused Product, and to once and for all remove the cloud of uncertainty that has been cast over the Queryly Accused Product. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) ("the purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights"); *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (where patentee's "forceful threats [against customers] created a cloud over [supplier's] business, shareholders, and customers, and [supplier's] potential liability increased as it continued to sell the allegedly infringing products," supplier "entitled under the Declaratory Judgment Act to seek a timely resolution of . . . threats of litigation and remove itself from 'the shadow of threatened infringement litigation'") (citation omitted).

**FIRST CAUSE OF ACTION—DECLARATION OF NON-INFRINGEMENT**

**(U.S. Patent No. 7,689,617)**

30. Paragraphs Nos. 1-29, *supra*, are incorporated as if fully stated herein.

31. As detailed below, the asserted '617 Patent covers a method whereby a navigation or

search system learns to associate unknown words with documents based on how a user "navigates" (clicks through) documents resulting from a search query. That is, the user's navigation through documents teaches the system to associate formerly unknown words with documents. Queryly's system bears no resemblance to the claimed method.

32. The asserted '617 Patent, issued Match 30, 2010 and is titled, "Dynamic Learning For Navigation Systems". **Exhibit C.**

33. As explained in the '617 Patent:

> In overview, the present approach builds upon that approach of generating associations between general words (in particular, words that are not keywords and are not synonyms given in a "thesaurus" generated in advance, hereinafter called "learned words" or "unknown words" depending on the context) and keywords and using these associations to direct the user to relevant nodes of the graph that contain information or instructions the user may be seeking. However, in the present case, when a user types an unknown word (i.e. a word that is neither a keyword or an existing synonym, either generated in advance or through the learning method itself), the user is asked in one of several different ways to trace down a path from the root node of the graph (or from the level of the root node's children) to a node that contains information relevant to the user. Then one of two actions are taken: i) either the unknown word is associated with that node itself (or equivalently, with the document attached to that node), or, ii) more powerfully, the unknown word is associated with all the keywords in the document. Thereafter, as before, the next time a user inputs the same hitherto unknown (but now learned) word to the system, the system looks up the associated node(s) or keywords and returns either the nodes associated with the learned word (if the first action above is employed), or the nodes/documents that contain the associated keywords (if the second action above is taken) to the user. As before, *the process of learning continues so a learned word can acquire additional associated nodes or keywords as users continue to use the system*.

'617 Patent, 2:48-3:16.

[remainder of page intentionally left blank]

34. Or, as graphically explained in the '617 Patent:



FIG. 5

35. In other words, the claimed search or navigation engine learns because the user teaches it to associate words as the user clicks through search results.

36. Queryly's search engine works nothing like the claimed method.

37. IP Edge, purporting to be the "licensing advisor" for Hitel, sent to Queryly's customer the Boston Globe a Notice of Infringement. **Exhibit A.**

38. IP Edge included an infringement chart with said Notice. *Id.*, at DJExhA_018-74.

39. IP Edge's purported evidence of infringement demonstrably proves that Queryly's search product does not infringe any claims of the asserted '617 Patent.

40. By way of but one example, each of the asserted claims require that the accused search system "learn[] one or more associations between the unknown word and one or more keywords from the documents attached to the current node, such that a direct relationship is formed between the unknown word and the one or more keywords". *See, e.g.,* '617, 13:62-67. **Exhibit C.**

41. In other words, an infringing search product must learn to associate unknown words with key words in documents. Queryly's system demonstrably does not perform the claimed method.

42. In the Queryly search engine, if a misspelled word is entered, the system ***immediately*** associates that word with another word stored in the system ***and then*** performs the search query.

43. The Queryly search engine never "learns" to associate a misspelled word and another word based upon user navigation.

44. That the Queryly search engine does not infringe is clear, even from IP Edge's own "evidence". For example, IP Edge's own claim chart shows that the outcome of the search does not change once a user navigates through documents and/or nodes. *See, e.g.*, **Exhibit A**, at DJExhA_036.

[remainder of page intentionally left blank]

45. In Hitel/IP Edge's infringement chart, someone entered the misspelled word "colunms" in the search bar, and 67 documents resulted from that original search:



**Exhibit A**, DJExhA_028.

46. Among the 67 results are articles by a man named Colum McCann:



https://www.bostonglobe.com/search/?q=colunms

**Exhibit A**, DJExhA_029.

47.  Hitel/IP Edge alleges that when the user selects one of the articles written by Colum McCann, the Accused Product learns to associate the misspelled word "colunms" with the author Colum McCann.  **Exhibit A**, DJExhA_028-36.

48.  But the problem for Hitel/IP Edge—as any reasonable pre-suit diligence would have shown—is that when the search for "colunms" is again performed, the exact same results as the first search result.  **Exhibit E**.

49.  Not only does the exact same 67 articles result (proving the system has not learned), but-as with the initial search—so do many articles not written by Colum McCann, e.g. "Chasing Out the Old Horse" by Ru Freeman (again, proving no association between colunms and Colum were learned):



**Exhibit E**.

50.  The accused product clearly does not learn by user navigation in the manner claimed.

51.  IP Edge's own infringement chart makes this clear.

52.  And as any reasonable pre-Notice investigation would have conclusively shown.

53.  Hitel/IP Edge's infringement allegations are demonstrably false and baseless.

54.  Regardless, an actual and justiciable controversy exists between Queryly and Hitel/IP Edge as to Queryly's non-infringement of the '617 patent as Hitel/IP Edge has accused Queryly's product of infringement.

55.  Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq.,

Queryly seeks a declaration that it does not infringe any claim of the '617 patent.

**SECOND CAUSE OF ACTION—DECLARATION OF INVALIDITY**

**(US Patent No. 7,689,617; Section 112 of the Patent Code, Title 35)**

56. Paragraphs Nos. 1-55, *supra*, are incorporated as if fully stated herein.

57. The claims of the '617 Patent are invalid as will be shown in Queryly's invalidity contentions served under the Local Patent Rules.

58. But here, by way of but one example of the claims' invalidity:

59. During prosecution the applicant added the term "user navigable nodes" to overcome prior art rejections.

60. The original claims as filed did not contain the term "user navigable nodes".

61. The original specification as filed did not contain the term "user navigable nodes".

62. As such, the claims of the '617 Patent issued without sufficient disclosure in the specification.

63. The asserted claims are invalid for failing to meet the "written description" requirement of 35 U.S.C. §112.

64. An actual and justiciable controversy exists between Queryly and Hitel/IP Edge as to the validity of the claims of the '617 patent.

65. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., Queryly seeks a declaration that it does not infringe any valid claim of the '617 patent.

**THIRD CAUSE OF ACTION—DECLARATION OF UNENFORCEABILITY**

**(US Patent No. 7,689,617; Inequitable Conduct)**

66. Paragraphs Nos. 1-65, *supra*, are incorporated as if fully stated herein.

67. The person(s) recording assignments with the USPTO are subject to the duty of candor

under 37 C.F.R. § 1.56(a).

68. Ms. Rathgeber and Ms. Deitz recorded the '617 assignment with the USPTO, allegedly on behalf of Hitel.  **Exhibit B.**

69. But Ms. Rathgeber and Ms. Deitz are actually employees of IP Edge.

70. The fraudulent assignments filed with the USPTO purport to transfer "all right, title, and interest" to sham plaintiffs such as Hitel, but in reality, IP Edge retains material rights.

71. IP Edge has a pattern and practice of using its Office Manager, Ms. Deitz, to file fraudulent assignments with the USPTO.

72. By way of but two examples, IP Edge used their Office Manager, Ms. Deitz, to file assignments on behalf of Nimitz and Longbeam, to other entities that appear to be sham plaintiffs for IP Edge.  The Honorable Judge Colm Connolly suggests these filings, like the assignment at-bar, were filed to perpetrate a fraud on the USPTO.  Memorandum (Connolly, J.), **Exhibit D**, at 41, 51.

73. Indeed, the facts evidencing fraud in the Nimitz and Longbeam matters are very similar to the fact here:

> It also appeared from Mr. Hall's testimony that Mavexar [*i.e.,* IP Edge], not Nimitz, controlled the #328 patent, and that Nimitz did not in fact possess "all right, title, and interest" to the #328 patent as had been represented in the assignment filed with the PTO. No doubt the assignment identified Nimitz as the assignee of the patent. But the assignment was filed by someone using what appeared to be Linh Dietz[7]'s IP-Edge email account; Linh Dietz acted on behalf of Mavexar [*i.e.,* IP Edge] in Arranging for Mr. Hall to authorize Nimitz to appear as the assignee on the assignment; Mr. Hall said Nimitz had paid nothing for the assignment of the patent; the named assignor of the patent was not known by Mr. Hall but was connected to IP Edge and apparently to Linh Dietz; Nimitz received only 10% of any revenue generated by the patent; and Nimitz played no role in the decisions associated with asserting the #328 patent in and settling lawsuits. These facts suggested that the assignment of the #328 patent could very well be a fiction, and that frauds may have been perpetrated on the PTO and this Court.

Memorandum (Connolly, J.), **Exhibit D**, at 51.

---

[7] The record shows two spellings for Ms. Deitz's name, Deitz and Dietz.

74. That is, here, as in Nimitz and Longbeam, IP Edge has created a sham plaintiff in order to secret and protect itself from sanctions resultant from filing meritless litigations, and part of that sham includes filing fraudulent patent assignments with the USPTO.

75. Queryly has not yet seen the agreements between IP Edge and the Managing Member of Hitel, *i.e.*, the agreements between IP Edge and Ms. Rathgeber, the "Executive Support and Capital Partner Liason [*sic*]" (*i.e.,* an executive assistant) at IP Edge. But there is sufficient circumstantial evidence to support the contention that IP Edge's statement to the USPTO transferring "all right, title, and interest" in the '617 Patent to Hitel is fraudulent.

76. Apart from the use of its own office staff as the "owner" of Hitel, apart from sending the enforcement letters as Hitel's "advisors," apart from the overlap in addresses between IP Edge and Hitel, there is substantial evidence of IP Edge's actual ownership of patents fraudulently "transferred" to other sham entities that provides circumstantial evidence that IP Edge is engaged in the same activity here. For example, as shown in another case involving an IP Edge plaintiff:

> The owner and operator of a food truck and of what he described as a "fried chicken joint," Mr. Bui agreed to become the sole owner of [IP Edge entity] Mellaconic to take advantage of an opportunity' offered to him by the seemingly ubiquitous Linh Dietz. . . . Mr. Bui struggled to explain how and why [IP Edge entity] Mellaconic was able to obtain patents without paying for them. And like Mr. Hall, Mr. Bui essentially acknowledged that he rubber stamped "approvals" of [IP Edge's] decisions to file and settle lawsuits asserting patents putatively titled in [IP Edge entity] Mellaconic's name.

Memorandum, Connolly J., **Exhibit D**, at 49-50.

77. That is, IP Edge gave a food truck owner (and others) "ownership" of patents for free. Said owner merely collected "passive" income of 5-10% but IP Edge paid all expenses, and made all litigation and settlement decisions. *See id.* (*passim*). Hardly a transfer of "all right, title, and interest".

78. As office staff, Ms. Rathgeber and Ms. Deitz must be supervised by an attorney when

performing duties that are legal in nature.

79. The Managing Partner for IP Edge is Gautham Bodepudi. **Exhibit A,** at DJExhA_001.

80. Mr. Bodeoudi is the attorney that sent the Notice of Infringement to the Boston Globe. **Exhibit A,** at DJExhA_001.

81. As the Managing Attorney it is likely that Mr. Bodepudi is responsible for supervising his office staff, *i.e.,* Ms. Rathgeber and Ms. Deitz.

82. Mr. Bodepudi is registered as an attorney before the USPTO.

83. As such, Mr. Bodepudi owes the USPTO a duty of candor.

84. Thus, Gautham Bodepudi caused his staff to file a fraudulent patent assignment purporting to transfer "all right, title, and interest" to Hitel when actually IP Edge has retained ownership interests in the '617 Patent.

85. Assignments are material because they are how the USPTO, courts, and parties determine ownership rights in a patent. Indeed, in a recent mandamus petition denied by the Federal Circuit, IP Edge (via Nimitz) argued that an assignment is the only document that mattered to determine standing, a position contra well-established law. None the less, IP Edge appears to be using assignments as both a shield and a sword, *i.e.*, to justify lawsuits from sham entities and to attempt to hide the true patent owner (IP Edge).

86. There is substantial evidence that Mr. Bodepudi caused his staff to file fraudulent assignments with the intent to defraud the USPTO (and courts) including that the patent at-issue was purportedly transferred by someone that works as Mr. Bodepudi's secretary. Further, there is substantial evidence that IP Edge and Mr. Bodepudi have a pattern and practice of filing fraudulent assignments with the USPTO in order to hide IP Edge's actual ownership of weak patents being

asserted in cases without merit.  *See, e.g.*, Memorandum (Connolly, J.), **Exhibit D.**

## REQUEST FOR JURY TRIAL

## RELIEF REQUESTED

Queryly seeks an order or orders finding:

- The Accused Product does not infringe any claims of the '617 Patent;

- The claims of the '617 Patent are invalid and unenforceable;

- Queryly's attorney's fees must be paid by Hitel and IP Edge; and

- Any other sanctions and findings the Court deems just.

Respectfully submitted,

*Rachael D. Lamkin*
Rachael D. Lamkin
Lamkin IP Defense
916.747.6091
RDL@LamkinIPDefense.com

*Attorney for DJ Plaintiff*
*The Boston Globe*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2022, a true and accurate copy of the above and foregoing:

**COMPLAINT FOR DECLARATORY JUDGMENT**

Was filed with the Court's CM/ECF system, which provides service to all counsel of record. Queryly will also effectuate service through a process server under Rule 4.

*Rachael D. Lamkin*
Rachael D. Lamkin